## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 18-00293-14-CR-W-DGK

CORY TAZ-DALTON HACK,

Defendant.

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Bruce Rhoades, Assistant United States Attorney, and the defendant, CORY TAZ-DALTON HACK ("the defendant"), represented by James L. Spies.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to the lesser included charge contained within **Count One** of the third superseding indictment *now* charging the defendant with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, that is, conspiracy to distribute methamphetamine, a Schedule II controlled substance;

Additionally, the defendant agrees to and hereby does plead guilty to **Count Two** of the third superseding indictment charging the defendant with a violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i), (ii) and (h) that is, conspiracy to commit money laundering;

In addition, the defendant agrees to and hereby does plead guilty to **Count Four** of the third superseding indictment charging the defendant with a violation of 18 U.S.C. § 924(c)(1)(A)(i), that is, carry, possess, and use firearms during, in relation to, and in furtherance of, drug trafficking, and;

The defendant **admits the allegations of forfeiture**, which *also* include a **money judgment** to be entered against the defendant, all as contained in the third superseding indictment.

By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

On 12/18/2018, Defendant Cory Hack was arrested on local charges at Co-Defendant Sparks' residence along with Co-Defendant Walker. Hack was in possession of half a gram of methamphetamine and three grams of marijuana located in his pants.

Hack had lived at Sparks' residence for approximately one month. Hack had been a methamphetamine user for approximately the last eight years and a marijuana user for approximately 12 years. Sparks supplied Hack his methamphetamine most of the time. On approximately five occasions, Hack was present and knew one to two kilograms of methamphetamine was at the house and that Sparks was the leader of the drug trafficking organization (DTO).

Approximately 11 of the guns found at Sparks' residence belonged to Hack. Some of the firearms included an assault rifle, assault rifle pistol, "Pap", two Glocks, Smith and Wesson, and two shotguns. The firearms were at the residence for protection because the residence had recently been robbed of multiple firearms.

2

ATF Trace results of the firearms seized at Sparks' residence found Hack to be the original purchaser of six of the firearms. All six firearms were purchased on 11/30/2018 at Smart Pawn, 6301 Troost, Kansas City, Missouri. The six firearms included evidence items:

1. 1B12 Glock 19   9mm serial number ACHY981
2. 1B22 Glock 22 .40 caliber serial number BHAK692
3. 1B59 IO Inc Inter Ordnance mulit caliber pistol serial number SDW-00160
4. 1B61 Taurus 9 mm serial number THP36424
5. 1B70 Glock 20 10 mm serial number BDDK234
6. 1B76 Zastava Pap 762 caliber serial number M92PV029294

On 01/17/2019, Hack was arrested during a vehicle accident driving Co-Defendant Walker's vehicle. Hack was in possession of syringe containing 40 cc of methamphetamine, a digital scale, a magazine containing nine rounds of 9 mm ammunition, and a box of 9 mm ammunition containing five rounds.

Cooperating Defendant 1 (CD1) provided interviews between May 2019 and June 2020. CD1 stated Hack wanted to sell drugs for Sparks. CD1 stated Hack moved into Sparks' residence in the middle of November 2018. Hack took half of a kilogram of methamphetamine to Bolivar, Missouri to meet a new customer for Sparks. Hack liked to carry a gun and was always cleaning guns Sparks owned. CD1 stated Hack was a daily user of methamphetamine and marijuana. From approximately November 2018 to December 2018 Hack assisted in the distribution of approximately 500 grams of methamphetamine.

CD1 stated Hack and Sparks went to a pawn shop to purchase several guns. CD1 stated Hack had no money but he was not a felon and Sparks was a felon. CD1 stated Hack put the guns in his name and Sparks paid for the guns. Hack and Sparks purchased 6 guns that trip. Some had extended magazines. *removed* ~~god~~ 3-22-22

CD1 stated the guns were purchased due to a robbery that occurred at Sparks' residence. Prior to the robbery Sparks had CD1 all the bullets out of the guns inside the residence and put the bullets in one area. CD1 stated during the robbery they lost approximately $4,000.00, 20 guns, and jewelry. CD1 stated Hack carried the items to the suspect's vehicle at robbery suspect's request. CD1 stated Sparks knew the names of the suspects and the robbery really did occur. The police were told the suspects were there to purchase a vehicle. However, the suspects were really there to purchase methamphetamine.

Cooperating Defendant 3 (CD3) provided interviews between April 2019 and June 2020. Hack purchased several guns at Sparks' direction. Sparks paid for the guns and it was known Sparks owned the guns. Hack had been staying at Sparks' residence for approximately three months. Hack was a methamphetamine user but also sold "eight balls" (3.5 grams) of methamphetamine. Co-Defendant Meyers sold and used methamphetamine. Meyers was a friend of Hack's.

3

CD3 stated on the night they were robbed the suspects knocked on the front door. CD3 stated she could see on the surveillance camera it was people CD3 knew and CD3 told Co-Defendant Jones and Hack not to let them in. CD3 stated Jones received a text from Sparks, which stated Sparks was waiting for the suspects to arrive. CD3 stated after the text from Sparks, Jones let the suspects in the front door of the residence.

CD3 stated the suspects kept asking where the backpack was. CD3 stated the backpack contained a kilogram of methamphetamine, which CD3 wondered why they were asking for the backpack. CD3 stated once the suspects located the backpack the looked inside the backpack and then asked where the rest of the money was located.

CD3 stated prior to the robbery Sparks had told CD3, Jones, and Hack to separate the guns, ammunition, and magazines, which they had done. CD3 stated looking back at this she believed that Sparks was involved in this robbery and he made sure all the guns would be unloaded and stacked up in the living room by the door.

CD3 stated when Sparks arrived at the residence, he was upset but not as mad as he normally would have been. CD3 stated Sparks told CD3, Jones, and Hack he was going to call the police, which was completely out of the ordinary. CD3 stated the police were called and the story was put together on what to tell the police. Jones left the residence before police arrived.

CD3 stated when the police arrived, CD3 and Hack told the police the suspects had taken $5,000.00 and assaulted CD3. CD3 stated the police were not told about Jones being present and being a victim of the robbery or the theft of the guns and methamphetamine.

Cooperating Defendant 2 (CD2) provided interviews between September 2019 to June 2020. CD2 stated CD2 met Hack at Cooperating Witness J's (CWJ) residence. CD2 stated Hack lived at this residence with CWJ and a second person at a residence.

CD2 stated Co-Defendant Meyers and Hack were methamphetamine customers. CD2 stated at first, Sparks would have methamphetamine delivered to CWJ's residence, where Meyers and Hack would get their methamphetamine. Then CD2 began providing methamphetamine from the Sparks' DTO to Meyers and Hack.

CD2 said at first Hack was just a drug user. After Sparks and CD2 had a falling out, Hack started staying at Sparks and started being the "guard dog". CD2 stated Hack moved into Sparks' residence and would watch over Co-Defendants Walker and Jones while they were selling methamphetamine and collecting drug proceeds. CD2 stated CD2 used methamphetamine with Hack and provided him with up to two ounces to sell.

Cooperating Witness K (CWK) provided interviews in March 2020. CWK asked "Where is Cory's photo". CWK was asked if he was referring to Cory Hack. CWK stated he did not know his last name but stated he was the person that lived at Sparks' residence that purchased the guns for Sparks. CWK stated "Cory" had been arrested and then let go. CWK stated Hack returned to Sparks' residence after he (Hack) was released and then came to CWK's residence and told him what had happened. CWK identified a photo of Cory Hack as "Cory".

4

Cooperating Defendant 17 (CD17) provided an interview in September 2020. CD17 met Hack through Co-Defendant Walker when Walker was making a methamphetamine delivery to Co-Defendant King. CD17 witnessed Hack assist Walker on three separate methamphetamine deliveries to King in approximately November 2018. CD17 did not know the amount on methamphetamine delivered but stated CD17 received at least 4 ounces on each of the three deliveries. In approximately November 2018, Hack provided at least 340 grams to CD17.

Based on the above facts and other evidence disseminated in discovery, from approximately November 2018 to December 2018, Hack conspired to assist the Sparks DTO in the distribution of more than 5 kilograms of methamphetamine.

Defendant acknowledges that while the information set out herein may not allege exact amounts of methamphetamine associated with the defendant, the amounts alleged herein, along with other statements and evidence in the case, are not less than 5 kilograms for which the defendant is responsible. The defendant further acknowledges the substances with which defendant was involved were in fact methamphetamine, a Schedule II controlled substance.

Defendant additionally acknowledges that during the dates charged in the third superseding indictment, and at least partially within the Western District of Missouri, the defendant used or knew at least some of the proceeds obtained from defendant's drug distribution, and the distribution of others in the conspiracy, were used to pay living expenses, buy assets, and to purchase additional drugs for distribution. Defendant also acknowledges that he and other co-conspirators used cash during the conspiracy to conceal the nature of their illegal activities.

Defendant additionally acknowledges that at least some acts committed in furtherance of the distribution and money laundering conspiracies were committed within the Western District of Missouri, during the dates alleged in the indictment.

Defendant further acknowledges that all the proceeds from all the drugs sold in the conspiracy, any use of proceeds, any items purchased with proceeds, or utilized in the conspiracy, or obtained through operation of the conspiracy, are subject to forfeiture. Additionally, defendant admits, agrees, and accepts that the facts herein, the drug price calculations contained within the third superseding indictment (adopted herein by the parties), and the drug level for which the Court ultimately holds defendant responsible, are the basis for the money judgment to be imposed against defendant pursuant to his admission of the allegations of forfeiture and the money judgment contained within the third superseding indictment.

Defendant additionally acknowledges that defendant, and others in the conspiracy of whom the defendant was knowledgeable with, in agreement with, and acted in concert with, were in possession of, carried, or used firearms during the drug trafficking conspiracy, and in furtherance of that conspiracy, with at least one act occurring within the Western District of Missouri, and during the dates charged in the third superseding indictment.

5

Additional evidence exists that may further implicate the defendant in these conspiracies. The defendant acknowledges that evidence was provided to defendant's attorney via discovery and the defendant has had an opportunity to review all of the discovery with the attorney prior to signing this plea agreement and further acknowledges that evidence, and any additional evidence obtained prior to sentencing, may affect the ultimately determined drug responsibility level, enhancements, and ultimate sentence of the defendant.

The parties have agreed to a drug level *not less than* a drug level 32 and additionally to a guideline enhancement of two (2) levels because of defendant's guilty plea to the money laundering conspiracy. However, it is understood by the parties that the pre-sentence investigation report (PSIR / PSR) or the Court at sentencing could assess a higher drug level of responsibility, and other enhancements or reductions, for the defendant, based on the evidence in the case to date or that becomes known before sentencing. If a higher drug level or other enhancements or reductions are recommended by the pre-sentence investigation or found by the Court at sentencing, while the parties are free to express their respective positions about that higher drug level or other enhancements or reductions, they agree no evidence or testimony other than a case agent will be required to be produced by the United States at the sentencing hearing to establish by a preponderance any objected to facts of the PSR.

Finally, defendant acknowledges the PSR and the Court at sentencing, in calculating defendant's drug responsibility and applicable sentence range, may use *either* methamphetamine mixture and substance *or* methamphetamine actual. Regardless of which method is used, and while the parties are free to argue their position on which method should be used, the parties are prohibited from filing objections about which method is used and the result of using either method.

**4.** **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the third superseding indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which defendant is pleading guilty.

**5.** **Statutory Penalties.** The defendant understands that upon pleading guilty to the lesser included charged contained within **Count One** of the third superseding indictment *now*

6

charging the defendant with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, that is, conspiracy to distribute methamphetamine, the maximum penalty the Court may impose is not more than twenty (20) years imprisonment and not more than a $1,000,000.00 fine. In addition, that the Court shall impose not less than three (3) years of supervised release and that this offense is a Class C felony.

The defendant additionally understands that upon pleading guilty to **Count Two** of the third superseding indictment charging the defendant with a violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i), (ii) and (h) that is, conspiracy to commit money laundering, the maximum penalty the Court may impose is not more than twenty (20) years' imprisonment and not more than a $500,000.00 fine. In addition, that the Court shall impose not more than three (3) years of supervised release and that this offense is a Class C felony.

The defendant further understands that upon pleading guilty to **Count Four** of the third superseding indictment charging the defendant with a violation of 18 U.S.C. § 924(c)(1)(A)(i), that is, carry, possess, and use firearms during, in relation to, and in furtherance of, drug trafficking, the minimum penalty the Court must impose is five years imprisonment, *consecutive* to any other sentence imposed, while the maximum penalty the Court may impose is not more than life imprisonment, *consecutive* to any other sentence imposed, and not more than a $250,000.00 fine. In addition, that the Court shall impose not more than five (5) years of supervised release and that this offense is a Class A felony.

Finally, the defendant acknowledges that once the Court enters the forfeiture order to which the defendant is admitting that admission and resulting order will forever remove any right, claim or interest the defendant may have to the property set out in the third superseding indictment, real and personal, and that thereafter, the defendant will have no ability to recover any part of said

7

forfeited property and the defendant therefore agrees to make no effort, personally or through others, to regain possession of said property. The defendant additionally acknowledges that as part of the criminal forfeiture allegations admission, the Court will also enter a money judgment against the defendant, and any other defendants found liable for the forfeiture allegations, in an amount not to exceed $4,160,000.00. That amount is to be based upon the amount of the defendant's controlled substance responsibility ultimately determined by the Court at sentencing and the controlled substance value calculations contained within the third superseding indictment.

The defendant understands that for each count of conviction the Court shall impose a $100 mandatory special assessment, which must be paid in full *prior* to sentencing in this case. Failure to *timely* pay said assessment could result in the Government seeking a continuance of the sentencing until it is paid OR, in the alternative, the Government can consider the failure to timely pay it as a violation of this plea agreement and seek to have this agreement voided.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range;

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court shall impose a term of supervised release of not less than five (5) years;

d. if the defendant violates a condition of supervised release, the Court may revoke that supervised release and impose an additional period of imprisonment without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release;

8

e.   the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range and the Court may impose sentences concurrently or consecutively;[1]

f.   any sentence of imprisonment imposed by the Court will not allow for parole;

g.   the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h.   the defendant may not withdraw this guilty plea solely because of the nature or length of the sentence imposed by the Court;

i.   the defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that defendant will not contest any such forfeiture proceedings;

j.   the defendant agrees to forfeit all interests defendant owns or over which defendant exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property: *any firearms seized, and a money judgment in an amount to be based upon defendant's drug responsibility ultimately determined by the Court at sentencing and the drug value calculations contained within the third superseding indictment, but not to exceed $4,160,000.00.* With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k.   the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before sentencing.

---

[1] The defendant acknowledges the Court *must* impose the sentence for Count Four *consecutive* to any other sentence imposed.

9

**7.  Government's Agreements.**   Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the charges defendant has pled to herein for which it has venue and which arose out of the defendant's conduct described above, except as set out in paragraph 15 below.   Following sentencing, presuming compliance with the terms of this plea agreement, the United States agrees to dismiss Count Six, as it applies to Defendant Hack.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement and the limitations set out herein, including those in paragraph 15 below.   If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence.   The defendant expressly waives any right to challenge the initiation of the dismissed or additional charges against defendant if defendant breaches this agreement.   The defendant expressly waives any right to assert a statute of limitations defense if the dismissed or additional charges are initiated against defendant following a breach of this agreement.   The defendant further understands and agrees that if the Government elects to file additional charges against defendant following breach of this plea agreement, defendant will not be allowed to withdraw this guilty plea.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence, or a conspiracy to commit any such acts of violence.   Further, the defendant understands that this agreement does not foreclose prosecution of any criminal activity of which the United States

10

Attorney for the Western District of Missouri has no knowledge. The defendant understands and agrees that if the Government files additional charges against defendant for one of these exceptions, defendant will not be allowed to withdraw this guilty plea.

   **8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which defendant has pleaded guilty.

   The United States may respond to comments made or positions taken by the defendant, defendant's counsel or anyone on defendant's behalf and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

   **9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may only withdraw these pleas of guilty if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts defendant's pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's

11

applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, that will not permit defendant to withdraw these pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The Sentencing Guidelines do not bind the Court and are advisory in nature; the Court may impose a sentence that is within, above, or below the defendant's ultimately determined Guidelines range; the Court may impose any multiple sentences to be served concurrently or consecutively;

b. The parties have agreed that the applicable Guidelines section for the offense of conviction is U.S.S.G. § 2D1.1 and § 2S1.1(b)(2)(B) and agree the drug level is *not less than* a base offense level 34. The parties reserve the right to address at sentencing any different drug level determined by the PSR or Court;

c. The parties agree the defendant is subject to a two-level enhancement under the guidelines for the money laundering conviction. While the parties recognize there might be other specific aggravating or mitigating U.S.S.G. applications applicable to this defendant, the parties elect to address at the sentencing hearing any found by the pre-sentence report or Court and agree to be bound by the Court's determination following the sentencing hearing;

d. The defendant appears to have admitted his guilt and accepted responsibility for his actions, and by timely notifying authorities of the intention to enter a plea of guilty has thereby permitted the Government to avoid preparing for trial and permitted the Government and the Court to allocate their resources efficiently. Therefore, the defendant appears entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines and the Government, at the time of sentencing, will make a motion with the Court to that effect unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and any pretrial release orders; or (2) attempts to withdraw this guilty plea; or (3) violates the law; or (4) otherwise engages in conduct inconsistent with an acceptance of responsibility;

e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

12

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw this plea of guilty;

g. The United States agrees to request a sentence within the United States Sentencing Guidelines range established at the sentencing hearing with a consecutive sentence for Count Four and the defendant agrees to request a reasonable sentence based on any good faith sentencing arguments the defendant cares to make that are not otherwise in conflict with agreements herein or the law. The sentencing argument agreements by the parties are not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including a sentence outside the applicable Guidelines range or a consecutive sentence;

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the third superseding indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and,

i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 or other places within this plea agreement, and any admissions made during the defendant's plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. <u>Effect of Non-Agreement on Guidelines Applications</u>.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. <u>Change in Guidelines Prior to Sentencing</u>.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. <u>Government's Reservation of Rights</u>.** The defendant understands that the United States expressly reserves the right in this case to:

     a. oppose or take issue with any position advanced by defendant, or anyone on behalf of the defendant, at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

     b. comment on the evidence supporting the charges in the third superseding indictment;

     c. oppose any arguments and requests for relief the defendant, or anyone on defendant's behalf, might advance on an authorized appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

     d. oppose any post-conviction motions for reduction of sentence, or other relief.

14

**14. <u>Waiver of Constitutional Rights</u>.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against the defendant;

    e. the right to compel or subpoena witnesses to appear on defendant's behalf; and

    f. the right to remain silent at trial, in which case that silence may not be used against defendant.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, those answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15

**15. Waiver of Appellate and Post-Conviction Rights**

a.    The defendant acknowledges, understands and agrees that by his *unconditional* plea of guilty pursuant to this plea agreement he waives the right to appeal or collaterally attack a finding of guilt *or* denial of a motion to withdraw his guilty pleas following the acceptance of his pleas of guilty pursuant to this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b.    The defendant expressly waives the right to appeal any sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" is a sentence imposed in excess of the statutory maximum. It is *not* a misapplication or miscalculation of the Sentencing Guidelines, an abuse of discretion, the imposition of an unreasonable sentence, or the imposition of a sentence different from that recommended by either party. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal the sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

c.    The defendant further acknowledges that if he violates the waivers set out in sections a. or b. above, the United States may re-instate or file any charges dismissed or not pursued as part of this plea agreement, regardless of any other language to the contrary in this plea agreement.

**16.  Financial Obligations.**   By entering into this plea agreement, the defendant states an understanding of and agrees to the following financial obligations:

a.    The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine or costs.

b.    The defendant will fully and truthfully disclose all assets and property in which defendant has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until the defendant has satisfied the restitution or fine or costs order in full.

c.    Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the

16

defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

d. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets, restitution, fines, or costs.

e. The defendant hereby authorizes the USAO to obtain a credit report pertaining to defendant to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of **$300.00** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of fulfillment of this obligation at the time of sentencing.

g. The defendant certifies that no transfer of assets or property has been made for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that no such transfers will be made in the future.

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives any and all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including,

17

without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives any and all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant Will Surrender to Custody at the Plea.** The defendant understands that the crime to which he is pleading is an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Accordingly, pursuant to 18 U.S.C. § 3143(a)(2), the Court must detain the defendant after he pleads guilty to the offense. Regardless of his custody status, the defendant hereby agrees not to contest his detention immediately after the guilty plea, to surrender to the custody of the United States Marshals at that time and agrees not to make any attempt at release from custody pending sentencing or transfer to the Bureau of Prisons following sentencing.

**20. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, *or otherwise breaches this plea agreement, before or after sentencing,* the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty.

18

The defendant also understands and agrees that in the event this plea agreement is violated, all statements made by the defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any and all rights under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant subsequent to this plea agreement.

**21. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorney or any other party to induce him to enter this plea of guilty.

**22. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

19

23.  **Standard of Interpretation.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether that party was involved in drafting or modifying this agreement.

24.  **Article III Waiver.**  The parties agree to conduct this guilty plea hearing before a magistrate judge if that becomes necessary.  This agreement hereby waives any and all rights the parties may have to conduct this guilty plea before an Article III judge.

Teresa A. Moore
United States Attorney

Dated: _____          _____
Bruce Rhoades
Assistant United States Attorney

I have consulted with my attorney and fully understand all my rights with respect to the offenses charged in the third superseding indictment.  Further, I have consulted with my attorney and fully understand my rights with respect to the applicable Sentencing Guidelines and any statutory minimums.  I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this plea agreement and I voluntarily agree to it.

Dated: _____          _____
CORY TAZ-DALTON HACK
Defendant

I am the attorney for defendant CORY TAZ-DALTON HACK.  I have fully explained his rights with respect to the offenses charged in the third superseding indictment.  Further, I have reviewed with him the applicable Sentencing Guidelines and any applicable statutory minimum sentences in this case.  I have carefully reviewed every part of this plea agreement with the defendant.  To my knowledge and belief, the decision by CORY TAZ-DALTON HACK to enter into this plea agreement is an informed and voluntary one.

Dated _____          _____
James Spies
Attorney for Defendant

20