IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TREVOR SCOTT SPARKS, (02), <br><br> Defendant. | Case No. 18-00293-02-CR-W-DGK |

**GOVERNMENT'S RESPONSE TO DEFENDANT SPARKS'S
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED CRIMES**

The United States of America by the undersigned counsel hereby files its response to Defendant Sparks's Motion in Limine to Exclude Evidence of Uncharged Crimes.

Although Defendant Sparks's motion in limine only discusses the torture and murder of James Hampton and the murder of Brittanie Broyles, the Government will address additional acts of violence committed by Defendants Sparks, Ginnings, and Patterson that were undertaken during and as a part of the charged drug conspiracy for purposes of its response to Defendant Sparks's motion.

**Summary of Anticipated Evidence**

The Government anticipates the following evidence being introduced, primarily through eyewitness testimony, regarding acts of violence that were committed by Defendant Sparks and other co-conspirators during and in furtherance of the charged conspiracy.

    **I.    Defendant Sparks's acts of violence in order to protect his drug residence.**

On June 2, 2018, Kansas City, Missouri police officers were dispatched to the area of Defendant Sparks's residence at 5501 Smart Avenue on a reported weapon disturbance. They contacted the victims who stated that they were fixing a flat tire outside of Defendant's Sparks's

residence when Sparks arrived in a BMW. Defendant Sparks then got into an argument with the victims and punched one in the face three times. Then another co-conspirator (a cooperating witness prepared to testify at trial) exited Sparks's residence and handed Sparks a semi-automatic handgun that he then pointed at the victims. One of the victims identified Sparks and noted he had a gold grill on his bottom teeth.[1] Also, at some time in 2018, Mitzi Fonville stole items from the front porch of Sparks's residence. Sparks and a co-conspirator subsequently located Mitzi Fonville at another co-conspirator's residence and proceeded to assault and strike Mitzi Fonville for stealing items from Sparks's front porch.

Additional cooperating witnesses will identify 5501 Smart Avenue as Sparks's residence where he conducted his drug business. They will further testify that, in order to protect his drug distribution, Sparks was protective of this residence and was suspicious of unknown people and vehicles near the residence.

    **II.**     **Violence related to co-defendant McCrorey's theft of drug funds.**

In May 2018, co-defendant Marion Douglas McCrorey stole approximately $35,000 of Defendant Sparks's money that McCrorey was supposed to use to purchase 10 kilograms of methamphetamine to deliver to Sparks. Russell McGinnis introduced McCrorey to Sparks, and as a result of McCrorey's theft, Sparks kept McGinnis held captive in his residence at 5501 Smart Avenue and beat McGinnis in an attempt to locate and recover the stolen money.

---

[1] Additionally, the Government anticipates testimony related to a search of Defendant Sparks's residence where a gold grill was observed on a nightstand next to several firearms.

2

Case 4:18-cr-00293-DGK   Document 701   Filed 10/18/22   Page 2 of 8

Furthermore, Defendant Sparks and other co-conspirators went to McCrorey's house and held the occupants, McCrorey's wife and children and two other females, at gunpoint while searching for the missing money. Sparks then threatened to kill McCrorey's wife and children if his money was not recovered.

### III. Assault of Jennifer Wesson regarding suspected cooperation with law enforcement investigation into Defendant Sparks's drug trafficking.

In approximately July 2018, Jennifer Wesson and co-Defendant Gloria Jones gambled and lost drug proceeds that were owed to Sparks at a casino in the St. Louis area. When they arrived back in Kansas City and returned to Sparks's residence, Jones informed Sparks and Ginnings that Wesson was an informant. Ginnings strangled her with an electric cord and tied her to a bar stool with an extension cord, and Sparks held a gun to her head and interrogated her about being an informant to the federal government reporting on their drug distribution.

### IV. Beating and murder of Richard Hampton and murder of Brittanie Broyles arising out of the theft of drugs and drug proceeds.

In July 2018, co-defendant David Richards was working in St. Louis as directed by Sparks to supervise the drug distribution of co-defendants Mainieri, Thurmond, and Schroeder. In late July/early August 2018, Richards stole approximately $27,000, a Chrysler 300, and methamphetamine that belonged to Sparks from the St. Louis residence. Sparks, along with other co-conspirators then drove to St. Louis in an attempt to locate Richards and recover the stolen money. Thurmond then reached out to James Hampton, and Hampton indicated he could help locate Richards. Hampton and Brittanie Broyles arrived at the St. Louis residence. Sparks, Richards, Broyles, and Thurmond then drove around St. Louis in an attempt to locate Richards but

3

Case 4:18-cr-00293-DGK   Document 701   Filed 10/18/22   Page 3 of 8

were unsuccessful. Upon return to the St. Louis residence, Sparks, Patterson and other co-conspirators tied up and beat Hampton with fists, brass knuckles, a BB gun, and pots and pans. Sparks also used a drill on Hampton.

Sparks and a co-conspirator then left the residence and contacted co-defendant Kenneth McClure, who was a customer of Sparks that also owned a flatbed tow truck. Sparks offered McClure four ounces of methamphetamine and forgiveness of a pre-existing drug debt in exchange for the use of the tow truck. McClure agreed and provided the tow truck to Sparks who then returned to the St. Louis residence. Hampton was placed in the trunk of a Dodge Challenger that was then loaded onto the flatbed tow truck. Sparks and other co-conspirators then drove the Challenger back to the Kansas City area.

On August 6, 2018, Lafayette County Sheriff's Department recovered the Challenger in rural Bates City, Missouri, on fire with Hampton's skeletal remains in the trunk. Witnesses near the scene immediately prior to the arson reported seeing the Dodge Challenger being driven by Ginnings and a vehicle following Ginnings being driven by Patterson. Multiple witnesses reported a smell of "dead animal" emitting from the vehicle. One witness reported the driver of the Dodge Challenger with his T-shirt pulled up over his nose and mouth.

After returning to Kansas City, Britannie Broyles was held captive at the direction of Sparks in various motels and Sparks's residence. When Broyles was last seen alive, she was seen leaving with Ginnings and Patterson. On August 8, 2018, Broyles body was discovered with two gunshot wounds at 6801 St. John Avenue. Sparks told other co-conspirators that he had Broyles killed because she knew too much about the beating and murder of Hampton.

**Argument**

The above-described acts of violence are admissible evidence against Defendants Sparks, Ginnings, and Patterson under established Eighth Circuit caselaw. In a case originating out of this District, the Eighth Circuit has previously addressed similar evidence in *United States v. Montano*, 506 F.3d 1128 (8th Cir. 2007). In *Montano*, the District Court admitted evidence relating to a murder that occurred in order to recoup $240,000 of stolen drug proceeds. The Eighth Circuit noted the murder was an act to control subordinates. *Montano*, 506 F.3d at 1132. The Court further found the "murder was committed by members of the conspiracy to further the conspiracy by demonstrating the lengths to which the conspirators would go to protect their drug dealing interests. The murder also was an attempt by the conspiracy to collect the conspiracy's stolen money." *Id.* Furthermore, the Court noted under *Pinkerton* liability, an "overt act of one conspirator in a conspiracy is attributable to all conspirators." *Id.*

The Eighth Circuit also addressed this issue in *United States v. Dierling*, 131 F.3d 722 (8th Cir. 1997). The relevant facts of the case were summarized as follows:

> Dierling and Younger killed Craig, a coconspirator, over a drug debt he owed Dierling. Craig was a heavy methamphetamine user, and he participated in the conspiracy's manufacturing operations, packaged methamphetamine for sale, and dealt drugs for Dierling. In late May or early June of 1995, Craig took a weekend trip for the purpose of selling drugs, but used them himself instead. Craig later told government witness Candy True that Dierling was upset with him and that he owed Dierling drugs and money. Michelle Crawford testified that soon thereafter Perkins and Holt administered a severe beating to Craig, explaining to him that "Brian said you shouldn't have did what you did." *Dierling* 131 F.3d at 729-730.

The *Dierling* Court found that evidence related to the murder was admissible because the death directly resulted from a drug debt, and it was an act by the conspiracy leaders to control subordinate members. *Id.* at 730-731. It further showed "the lengths the conspirators would go to protect their

5

interest in the long-term viability of the conspiracy." *Id.* at 731. Furthermore, it "demonstrated concerted drug-related action by all conspirators." *Id.*

The facts in this case are eerily similar to both *Montano* and *Dierling*. Hampton and Broyles were murdered by conspiracy members during an attempt to locate stolen drug funds and punish those believed responsible for stealing drugs and money. The murder also demonstrated the lengths to which Defendant Sparks went to protect his interests, especially in light of the beating of McGinnis, the threatening of McCrorey and his family, and the beating of Jennifer Wesson. Furthermore, Defendant Sparks promised methamphetamine and forgiveness of a drug debt to McClure in order to use the tow truck to complete the murder of Hampton. These acts of violence are intrinsically intertwined with the charged conspiracy. In *Montaro*, the Court noted that evidence of the murder "probably is highly prejudicial, but the evidence is not unfairly prejudicial." *Montano*, 506 F.3d 1132. The same analysis applies in this case; the evidence is directly relevant to the charged conspiracy and admissible at trial.

In addition, despite Defendant Sparks's claims in his motion, the murder of Hampton and Broyles is in fact evidence of <u>charged</u> conduct. Defendant Sparks is charged in Count Three of the Third Superseding Indictment with continuing criminal enterprise. One of the elements the Government must prove at trial is Defendant Sparks was an organizer, supervisor or manager of at least those five others, and furthermore, the Government must also prove Defendant Sparks was the principal administrator, organizer, or leader of the criminal enterprise to support a mandatory life sentence. *See* 8th Circuit Jury Instruction No. 6.21.848A; 21 U.S.C. § 848(b)(1). In *Dierling*, the district court addressed whether Dielrling was a leader or organizer of a conspiracy involving five or more people for purposes of the sentencing guidelines. The district court found that evidence "that it was Dierling's idea to kill Danny Craig, that he put out a contract on his life, and

6

that he induced others to beat Craig" was relevant to whether Dierling was a leader or organizer of a conspiracy involving five or more people for purposes of the sentencing guidelines. *Dierling*, 131 F.3d at 722. Although *Dierling* deals with a different legal premises, the analysis is the same under § 848(b)(1). Defendant Sparks role in participating in the torture of Hampton, directing others to murder Hampton, and specifically directing Defendants Ginnings and Patterson to murder Broyles is directly relevant to an element of a charged crime.

Therefore, the above-described acts of violence committed by Defendant Sparks, Ginnings, Patterson, and other co-conspirators are direct evidence of the conspiracy and were taken in furtherance of the conspiracy. They further show the relationships between the various co-conspirators, including Defendants Sparks, Ginnings, and Patterson. Additionally, Defendant Sparks's action in directing others to commit acts of violence in furtherance of the drug conspiracy is directly relevant to an element of the charged continuing criminal enterprise. Defendant Sparks's motion should, therefore, be denied.

        Respectfully submitted,

        Teresa A. Moore
        United States Attorney

By  /s/Bruce Rhoades

        Bruce Rhoades (AR88156)
        Assistant United States Attorney
        Violent Crime & Drug Trafficking Unit
        Charles Evans Whittaker Courthouse
        400 East Ninth Street, Suite 5510
        Kansas City, Missouri 64106
        Telephone: (816) 426-3122

# CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing was delivered on October 18, 2022, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

                                              /s/Bruce Rhoades
                                              Bruce Rhoades
                                              Assistant United States Attorney

8

Case 4:18-cr-00293-DGK   Document 701   Filed 10/18/22   Page 8 of 8